# UNITED STATES DISTRICT COURT
### OFFICE OF THE PROBATION OFFICER
### EASTERN DISTRICT OF TENNESSEE



## PETITION FOR WARRANT FOR OFFENDER UNDER SUPERVISION

**Name of Offender:** Clifford Dale Visage          **Case Number:** 1:04-CR-114-001

**Name of Sentencing Judicial Officer:** The Honorable R. Allan Edgar
United States District Judge

**Name of Presiding Judicial Officer:** The Honorable Curtis L. Collier
Chief United States District Judge

**Date of Original Sentence:** November 29, 2004

**Original Offense:** Possession of Child Pornography Through Interstate Commerce

**Original Sentence:** 21 months imprisonment, 2 years supervised release

**REVOKED - March 7, 2007**: 12 months imprisonment, 8 years supervised release

**REVOKED - November 29, 2010**: 23 months imprisonment, Lifetime supervision

**Class:** C Felony          **Criminal History Category:** I

**Type of Supervision:**   Supervised Release

**Date Supervision Commenced:** May 18, 2012

**Date Supervision Expires:**  N/A

**Assistant U.S. Attorney:** John P. MacCoon          **Defense Attorney**: Mike Caputo

**Revocation Guideline Range:** 3-9 Months          **Statutory Maximum:** 2 years

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# PETITIONING THE COURT

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation Number | Nature of Noncompliance |
|---|---|
| I | **Standard Condition #2**: The defendant shall submit a truthful and complete written report within the first five days of each month. |
| II | **Standard Condition #3**: The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer. |
| III | **Standard Condition #6**: The defendant shall notify the probation officer at least ten days prior to any change in residence or employment. |
| IV | **Special Condition**: The defendant shall have no direct or third party contact with the victims or any other children under the age of 18 without the prior written consent of the probation officer. |
| V | **Special Condition**: The defendant shall not associate and/or be alone with children under 18 years of age, nor shall he be at any residence where children under the age of 18 are residing, without the prior written approval of the probation officer. |
| VI | **Special Condition**: The defendant shall participate in a program of sex offender mental health treatment, as directed by the probation officer, until such time as he is released from the program by the probation officer. The defendant shall comply with the policies and procedures of the treatment program. |
| VII | **Special Condition**: All residences and employment shall be approved in advance by the probation officer. |

*This is Mr. Visage's 3rd term of supervised release (TSR) since his original TSR began on February 17, 2006. This TSR began on May 18, 2012. Since his release, he has had direct contact and/or associated with minors without probation officer approval on several occasions, he has failed follow the instructions of the probation officer, he has been untruthful with the probation officer, he has failed to promptly complete a safety plan for sex offender treatment purposes as instructed, he has failed to keep an accurate polygraph risk book as instructed, he has failed to submit accurate and complete sex offender monthly report forms as required, and he has failed to get employment approved in advance by the probation officer or notify this officer of changes in his employment as required.*

On May 21, 2012, Mr. Visage reported to the probation office for his initial office meeting. He was visibly upset, terse, and angry with this officer about his prior revocation because he was accused of "gawking" at underage girls at his church even though he admitted fantasizing about minor females at his church after failing a polygraph exam in February 2010. This officer read to him the conditions of supervision imposed by the Court. He was then given the following written instructions which are given to all convicted/registered sexual offenders under supervision by the probation office who are ordered to participate in sex offender treatment and required to submit to polygraph testing:

1. Be advised that because you are a convicted/registered sexual offender, you are considered to be a high profile/high risk supervision case. Therefore, you shall conduct yourself as a role model citizen, in a manner above reproach or impropriety, and you shall *fully* comply with your conditions of supervision.

2. You shall have no intentional or unnecessary contact with anyone under 18 years of age without the written permission of the probation officer.

3. You shall comply with the policies and procedures of your mental health sex offender treatment program which includes being truthful in treatment, avoiding/abstaining from any risky or questionable behavior, and *promptly* completing a "Safety Plan" approved by your treatment provider and/or this officer.

4. You shall immediately report to this officer by telephone any violation of supervision, possible violation of supervision, and risky or questionable behavior.

5. If you are unsure whether something is a violation of your conditions of supervision, possible violation of supervision, or risky or questionable behavior you shall contact this officer immediately by telephone in order to obtain clarification.

6. You shall maintain a daily list/journal of any violation of supervision, possible violation of supervision, and risky or questionable behavior which might cause a deceptive result on a polygraph examination.

7. You shall be truthful during polygraph examinations and shall not attempt to interfere with the examination in any way.

8. In order to satisfy third party risk requirements, you shall truthfully and completely disclose to any employer, anyone with whom you reside or enter into a rental agreement, and anyone you date, or any third party identified by your probation officer that you are a "convicted/registered sexual offender." You shall also disclose your offense of conviction exactly as indicated on your judgment, and you shall truthfully and completely answer any subsequent question(s) asked by the third party.

Mr. Visage signed the written instruction form. He was asked 2 times if he had any questions about what is expected of him on supervision. Each time he stated "no."

On <u>June 5, 2012</u>, this officer received Mr. Visage's Supplemental Monthly Reporting Form for Sex Offender for May 2012. One of the questions is "had <u>any</u> kind of contact with children under 18 years of age?" Mr. Visage checked yes, and then wrote "nieces and nephews visiting my mother - where I live." Two other questions on the form ask if he "lied, misrepresented, misled, or intentionally withheld any important information regarding your supervision..." from the probation officer or if he has "done anything else we should talk about that could be a supervision or treatment violation and/or risky or questionable behavior?" Mr. Visage checked "no" to both questions.

However, on June 13, 2012, this officer and United States Probation Officer (USPO) Joey Byars conducted a home visit at Mr. Visage's residence. He was asked if he was keeping his risk book current. He stated yes and asked if I wanted to see it. I said yes. There were 3 entries in the risk book in which Mr. Visage had ***direct contact, associated with, or had unnecessary contact*** with Jordan Lay, who is approximately 9 years old, without probation officer approval. Jordan Lay is the daughter of a longtime friend of Mr. Visage named Rick Lay.

> [NOTE: Mr. Visage's contact with Jordan Lay became an issue towards the end of his 2nd TSR after Mr. Visage failed routine polygraph exam regarding a question about touching the sexual parts of anyone under 18 and subsequently admitted fantasizing about underage girls at his church. Without probation officer approval, Mr. Visage began regularly eating Wednesday night supper with Rick Lay and his 7-year old daughter Jordan Lay. **See attached History of Supervision/Compliance with Supervision below** that was submitted to the Court in the Dispositional Report dated October 28, 2010. Specifically, under the heading "There are other violations which are not contained in the Petition for Warrant."]

The first risk book entry indicated that on May 19, 2012, *the morning after he was released from Bureau of Prisons custody*, Mr. Visage:

> "Left home at 9:05 a.m. to meet with Rick Lay at his office, arrived there at 9:12 a.m., visited with Rick and his daughter (Jordan) who was with him at his office. Left at 9:43 a.m...."

The second entry indicated that on May 20, 2012:

> "Had my mother take me to pick up my vehicle that had been in storage at Rick Lay's downtown garage, left at 11:55 a.m., arrived at 12:03 p.m., was met by Rick and his daughter (Jordan) we visited for about 30 minutes, left at 12:40 p.m...."

The next incident occurred on June 9, 2012:

> "Riding around in town looking for a place to rent 10:00 a.m. - 1:00 p.m. Ran into Rick Lay who was showing a house to a client, *his daughter Jordan was with him, as well as 2 young girl's with his client, said hello to Jordan*, talked with Rick and left. "

Mr. Visage ***failed to notify*** this officer of his contact with Jordan Lay on May 19th and 20th as required when he reported for his initial office meeting on May 21, 2012, and he ***failed to note this contact*** on his sex offender monthly report form for May 2012. He also ***failed to immediately notify this officer by telephone*** of his direct contact and/or association with Jordan Lay and other minors on June 9, 2012 as instructed.

When questioned why he would have direct contact with Jordan Lay after all the issues that have occurred during his supervision, Mr. Visage became visibly upset and said this is "bullsh_t." Mr. Visage then made a comment about this officer "accusing" him of having inappropriate intentions with Jordan Lay during his previous TSR and he expressed anger about the same. Mr. Visage then denied any deliberate contact

with Jordan Lay and <u>minimized his behavior</u> by claiming their contact was *brief* and insignificant. *However, as is his pattern, he completely ignored the fact that the Court ordered him not to have any direct contact with a minor or to associate with a minor without probation officer approval, and that this officer gave him written instructions to have no unnecessary contact with minors, and to immediately report to this officer by telephone any violation, possible violation, or risky or questionable behavior.*

Mr. Visage asked that this officer call Rick Lay to verify his statements. This officer instructed Mr. Visage to call Mr. Lay immediately. Once Mr. Lay was on the phone, this officer advised him that Mr. Visage noted contact with his daughter in his risk book. *Mr. Lay verified that Mr. Visage had contact with his minor daughter as indicated in the risk book.* Mr. Lay was then asked if he believed Mr. Visage was trying to engineer this contact. <u>At that point, Mr. Visage became even more upset and began cussing again.</u> Mr. Lay stated he did not believe Mr. Visage was purposely trying to have contact with his daughter and said there was no way Mr. Visage would know whether or not his daughter was with him when he (Lay) is working around town. This officer and USPO Byars then left the residence.

On <u>July 2, 2012</u>, Mr. Visage left this officer a voice mail message indicating that Mr. Lay's mother passed away the week before. He said he attended the services on Friday (June 29, 2012) and that:

> "Rick and I both thought it would be a good idea to let you know that Jordan was there. I have entered it in my risk book but we just thought it would be a good idea to call you and let you know that also. There was no contact or anything I just said, gave my condolences to *all* of them and then I left."

On <u>July 5, 2012</u>, this officer reviewed Mr. Visage's sex offender monthly report form for June 2012. He ***<u>failed to note</u>*** his contact with Jordan Lay on June 9, 2012 or that there were 2 other young girls who were present that day when the contact occurred.

On <u>August 27, 2012</u>, Mr. Visage reported for a routine polygraph exam, <u>which he</u> **failed**. Polygrapher Rick Rogers advised this officer that Mr. Visage ***<u>failed to bring his risk book to the exam</u>*** <u>as instructed by this officer and his sex offender therapist</u>, and was visibly angry. When advised that he failed the polygraph, Mr. Visage offered no explanation for the deceptive results.

On <u>August 28, 2012</u>, this officer instructed Mr. Visage to report to the probation office on August 29, 2012 and to bring his risk book.

On <u>August 29, 2012</u>, Mr. Visage reported as instructed and submitted his risk book to this officer. When asked if he had any explanation for failing his polygraph examination, he stated no. He was asked a 2nd time and he again stated no. He was advised he could leave.

On <u>August 30, 2012</u>, this officer spoke with Mr. Visage's sex offender therapist, Dr. Bertin Glennon, about his progress in sex offender treatment and recent polygraph failure. When advised that Mr. Visage did not bring his risk book to the polygraph exam, Dr. Glennon stated he specifically told Mr. Visage to take his risk book to the exam, along with a list of significant issues (like contact with Jordan Lay) and "read it" to the polygrapher. Dr. Glennon further stated that Mr. Visage was, once again, in a "**<u>relapse cycle</u>**" because he is not following instructions, failed the polygraph and because *"if you have been revoked 2*

*times, why would you willingly be within a block of a minor"* without probation officer approval. Dr. Glennon said Mr. Visage "***deliberately refuses to accept the rules***" and believes the conditions of supervision "***only apply to him the way he is willing to accept them.***" Dr. Glennon added that he can not understand why Mr. Visage continues to makes excuses for what he knows he is not supposed to do and then attempts to justify his behavior.

Mr. Visage also ***failed to promptly complete a "safety plan"*** (which is intended to reduce risk) as instructed by this officer. Dr. Glennon was asked if Mr. Visage promptly completed a safety plan after he began treatment more than 3 months ago in May 2012. He stated Mr. Visage submitted a safety plan several weeks before, but it was not approved. When asked if Mr. Visage revised his safety plan and submitted it for approval as required, Dr. Glennon stated "no." Dr. Glennon then recommended that Mr. Visage be required to submit to a psychosexual evaluation which would include a sexual history polygraph examination. This officer subsequently called Mr. Visage and instructed him to report for a psychosexual exam at Dr. Glennon's office on September 12, 2012, at 9:00 a.m.

On <u>September 4, 2012</u>, this officer received the polygraph report from Mr. Rogers indicating that during pre-test questioning for his routine polygraph on August 27, 2012, Mr. Visage disclosed the following:

> "Mr. Visage stated that when he was first released in May 2012, he was ***alone*** for about 30 seconds with a nine-year old female, Jordan, when the child's father, Rick, stepped into his office to pick up some papers. According to Mr. Visage, this occurred when he went to see Rick when he was first released to discuss retrieving his car that Rick was holding in storage. Mr. Visage said that he then met Rick the next day in Athens, Tennessee, and retrieved his vehicle. Jordan was also with Rick that day, but Mr. Visage was never alone with Jordan. Mr. Visage said he noted both of these incidences in his Risk Assessment Log. During this conversation regarding being alone with minors versus incidental contact with minors, Mr. Visage expressed hatred at the present time for you, and to some degree, Dr. Glennon, the organization, and me. He told me that in the past, you accused him of grooming Rick's daughter through church activities. <u>According to Mr. Visage, Rick initiated any personal contact he ever had with Rick and his family.</u> *Mr. Visage expressed a rage, anger, and hatred towards you for making what he believes are unfounded accusations.* Mr. Visage continued that he has <u>*never*</u> had a sexual hands-on victim. Consequently, he appears to resent the accusations."

Mr. Visage ***failed to disclose*** to this officer that he was ever alone with Jordan Lay for any length of time and he ***failed to note*** in his risk book or on any of his sex offender monthly report forms that he was alone with her or that this was something we needed to talk about.

The polygraph report also indicated that since his release in May 2012, "...Mr. Visage admitted noticing on two occasions females in the 14 to 15-year-old age group. In particular, he noticed their breasts. He *admitted having sexual thoughts of these girls*, but he denied masturbating to these thoughts." He also disclosed holding his nine-month old great niece in his arms. However, Mr. Visage ***failed to disclose*** these issues to this officer or in sex offender treatment and he ***failed to note*** them in his risk book or on *any* of his sex offender monthly report forms.

Mr. Visage was then asked the following relevant questions:

1. "Other than what we discussed today, have you been alone with anyone you knew to be under 18 years old.?"
2. "Since May 2012, have you searched for pornography on the Internet?"
3. "Since May 2012, have you viewed any teen or child pornography on the Internet?"

The results indicated Mr. Visage was "**Untruthful (Deception Indicated)** on his examination." After failing the exam he was given an opportunity to explain the results. "<u>Mr. Visage stated he does not like to hear the question about viewing child pornography</u>." He also asked technical questions regarding the exam in order to question the validity of the exam, but "offered no reasonable explanation for his deceptive responses."

On <u>September 12, 2012</u>, Mr. Visage submitted to a psychosexual evaluation as instructed.

On <u>September 13, 2012</u>, this officer received a copy of the psychosexual exam and the polygraph report. Mr. Visage ***failed*** the polygraph examination which specifically addressed his past sexual history. The polygrapher noted in the report that "at the commencement of the pretest interview, <u>Mr. Visage began a tirade about the validity of the polygraph... He did not feel that he should be taking a polygraph examination and that the government should not be ordering an examination because they are unreliable</u>." Mr. Visage was advised he could refuse to take the exam. He then submitted to the exam. *(NOTE: Mr. Visage has passed several polygraph exams in the past given to him by Mr. Rogers -including 3 in a row at the beginning of his 2nd TSR- and he never questioned the validity of those exams).*

Although Mr. Visage had previously denied any sexual contact with minors, he disclosed during pre-test questioning that "while in the military when he was 19-years old and stationed in Vietnam, he paid prostitutes for oral sex or intercourse. Approximately six of these prostitutes were 14 to 15-years-old in his estimation." He also disclosed that "he had sex with a prostitute in Singapore while in the military. He believes she was 18-years-old. He said it happened on two occasions with the same female."

Mr. Visage was then asked the following relevant questions:

1. "Are you now lying in any part of your sexual history that we reviewed together today?"
2. "Are you now withholding any sexual behavior from your sexual history that you were asked to record?"
3. "Other than what you told me today, do you have any victims that you are now hiding from your sexual history?"

The results indicated Mr. Visage was "**Untruthful (Deception Indicated)** on his examination." The report also indicated that "<u>deception was particularly marked in relation to Relevant Question 3...</u>" After failing the exam, Mr. Visage stated he wasn't sure about the age of the girl in Singapore and said "she might have been 16-years-old at the time." He also disclosed "that he ***still has in his possession*** a picture of this prostitute that he obtained when he was stationed in the military in the sixties." This not only a violation of treatment rules, but a violation of his special condition that he not possess any pictures or material he can use for deviant sexual arousal.

The psychosexual exam indicated Mr. Visage was diagnosed with "Personality disorder, Mixed cluster C, primary diagnosis." Dr. Glennon noted in the summary section of the psychosexual exam that Mr. Visage **"shows signs of a mixed personality disorder with prominent antisocial and narcissistic traits."** The report also notes that Mr. Visage is angry with this officer for accusing him of trying to groom Jordan Lay. As usual, Mr. Visage offered excuses as to why he had repeated contact with Jordan Lay, all of which appears to have occurred on a Saturday or Sunday except for the contact at the funeral services for Mr. Lay's mother which was on a Friday. Mr. Visage noted that Mr. Lay's "wife is a nurse and works on the weekends, so his friend must take care of his daughter during those times. Of course, Mr. Visage fails to note that it is *his* responsibility to ask Mr. Lay to meet with him without his daughter being present and since Mr. Visage is retired he could meet with Mr. Lay during the week.

The report further notes that Dr. Glennon asked Mr. Visage if there was any other time he had seen Jordan Lay. "He reported one time that he had picked two gentlemen up at the Knoxville airport; they were arriving for a meeting of the Kaiser Automobile Club. He said he drove them to the motel where the conference was being held and there he saw his friend, his wife, and the daughter. He was very clear that he had not talked to his friend's daughter."

Mr. Visage noted in his risk book that on June 17, 2012, he "... went to meet Rick Lay at Magnuson Motel in Sweetwater, 2:45 p.m. Took his vehicle and went to Knoxville airport to pick up two of his car club members flying in from Arizona, arrived there at 4:15 p.m... back at Sweetwater Motel 6:00 p.m., left at 6:10 p.m..." However, Mr. Visage ***failed to disclose*** to this officer that Jordan Lay was present during any part of this incident and he ***failed to note*** this in his risk book or on his sex offender monthly report form for June 2012 as required. The first time this officer was aware that Jordan Lay was present during any part of this incident was while reading the psychosexual exam.

Dr. Glennon noted on the last page of the report that **"his sexual offenses seem to be the result of a personality structure that is primarily narcissistic and antisocial. His ability to comply with the conditions of his supervised release seem to be dependant on his ability to *cooperate* with his community supervisor** (probation officer)."

On September 17, 2012, this officer spoke with Dr. Glennon about the psychosexual and polygraph exams. He stated that since the recent polygraph results indicated Mr. Visage was deceptive, his truthfulness continues to be an issue and is a clear sign that he is **not cooperating** in treatment. *He added that Mr. Visage's narcissistic and anti social traits indicate that the issue for him is not that he had contact with Jordan Lay or any other minors, or that he failed to follow the instructions of the probation officer, etc., it's that **he doesn't accept the authority of the Court to order him not to have contact with minors or impose any other conditions he does not agree with.*** Dr. Glennon said his mind set toward supervision and treatment is simple, **"he doesn't believe he has to change"** because he is not the one with the problem, it's the system that has the problem.

On September 18, 2012, this officer called Mr. Visage and instructed him to report to the probation office immediately and to bring his risk book and the picture of the young prostitute from Singapore. He claimed

he did not know where the picture was. When advised he disclosed to the polygrapher that he still possessed the picture, he became upset and reiterated that he did not know where it was.

Mr. Visage reported to the office as instructed. The psychosexual exam noted that he has been working for three elderly ladies doing handyman type work for them. Mr. Visage also noted this and other work in his risk book. <u>When asked why he did not get his employment approved in advance by this officer as required, he said he didn't know he was supposed to.</u> When he was reminded that his TSR conditions require that he get approval from the probation officer in advance for all employment and that he notify this officer 10 days prior to any changes in his employment, <u>he shrugged his shoulders and **_admitted_** he did not request permission from this officer</u>. As is his pattern, he then *minimized* failing to get approval for the employment, claiming that most of the work he did was for friends/acquaintances in their homes and that he has only earned about $250 since his release doing this work. He added that he does a lot of the work for free in order to pay people back who have helped him out in the past. He then asked permission to work for one of the ladies this weekend. He was told "no" and advised employment for convicted sexual offenders must be at a fixed location, at an approved business entity and not in a residential setting due to risk issues. He said the work was at a fixed setting; the homes of the women he works for. He was again denied permission. Mr. Visage also indicated in his risk book that he did maintenance work (pressure washing, cleaning, plumbing) at the home of Rick Lay's mother after she passed away and/or at Mr. Lay's office on several occasions in recent months. <u>Mr. Visage did not request permission from this officer to perform this work</u>.

This officer asked Mr. Visage if he had any explanation for failing either of his recently failed polygraph exams. He stated "no." When asked about the last exam regarding prior victims and the comment that he made after failing the exam that the Singapore prostitute may have been 16 years old, he claimed that was untrue and the polygrapher "suggested" that she was 16.

Mr. Visage was then advised that a revocation hearing would be requested before the Court. He asked on what basis. This officer then briefly reviewed the violations indicated above with him. He became very upset over the violations involving contact with Jordan Lay. He *minimized* his contact with her and said none of his contact with her was intentional. When reminded that the Court ordered him to have no direct contact with minors and not to associate and/or be alone with minors without probation officer approval, he asked if that meant he could not go to Wal-Mart since children are there. This officer advised Mr. Visage that there is a difference between him passing children at a store and him being in Jordan Lay's presence for 30 minutes the day after he gets out of prison, being alone with her for any length of time, and then following that by associating with her another 30 minutes 2 days after he is released from prison and again on June 9, 2012. He was advised that this contact her was aggravated by the fact that it was identified as a violation during his last revocation hearing. Mr. Visage was then asked why he never disclosed to this officer, or put in his risk book, or noted on his sex offender monthly report forms that he was alone with Jordan Lay -for any amount of time- after he got out of prison. He *<u>minimized</u>* the incident by claiming it was brief and non-consequential and that *he* did not see it as important.

With regard to his sex offender treatment violations and his failure to promptly complete a Safety Plan, Mr. Visage **_admitted_** that he never submitted a Safety Plan as required. When asked why he submitted untruthful and incomplete sex offender monthly report forms, **he rolled his eyes**.

After Mr. Visage left the probation office, this officer called Polygrapher Rick Rogers and advised him of Mr. Visage's claim that he (polygrapher) suggested the Singapore prostitute was 16 years old. Mr. Rogers stated after he failed the exam, he asked Mr. Visage if he was sure the Singapore girl was 18, and *Mr. Visage* said "she could have been 16."

**ASSESSMENT OF FLIGHT/DANGER AND BOND RECOMMENDATION:** Mr. Visage is 66-years old. He is a convicted/registered sexual offender who is serving his 3rd term of supervised release (TSR) since 2006. He has demonstrated during 3 different periods of supervision that he has no intention of complying with the orders of the Court or the instructions of the Court's probation office.

He was originally convicted of Possession of Child Pornography Through Interstate Commerce. His Criminal History Category is I. According to his presentence report, his instant offense involved not only possessing numerous child pornography images of children under the age of 12 and child penetration, but he also inquired about a sexual relationship involving what he believed to be a 6-year-old girl.

His first TSR was revoked on March 7, 2007, less than 13 months after his release from Bureau of Prisons custody, after he *re-offended* **and committed another federal offense while under supervision**. This involved him having on-line conversations with a 15-year-old girl from Pennsylvania, and a 16-year-old girl from Iowa, about sexual topics, including "how enjoyable it was." Mr. Visage also admitted receiving from the 15-year-old girl approximately "four to six pictures of her totally nude, masturbating, and putting objects in her vagina." He further admitted receiving nude pictures of the 16-year-old girl. Mr. Visage's excuse for this behavior was his claim that each girl's parents were aware of the conversations and sexually explicit topics. He also admitted viewing less than 100, but more than 50 sexually explicit photos, some of which included young children.

During his 2nd TSR, Mr. Visage's problems continued as he violated conditions which included having no direct contact with minors without probation officer approval, failing to notify 3rd parties of risks associated with his status as a convicted sexual offender, failing to follow the instructions of the probation officer, being untruthful with the probation officer, and not participating in sex offender treatment as required due to him being untruthful, deceptive and misleading in treatment. These violations involved him renting a duplex that adjoined his to a woman with 2 minor daughters within his victim pool who were approximately 8 and 12 years old, failing to disclose his sex offender status to the woman as required, and subsequently lying, misleading and deceiving the woman, this officer, and his sex offender therapist about the incident. After failing a polygraph exam, he also admitted fantasizing about some of the underage girls at his church, intentionally failing to disclose this information to this officer, his sex offender treatment therapist, or list it in his risk book and on his sex offender monthly report forms as required. His excuse was that he was *embarrassed* to admit that he fantasized about underage girls. Mr. Visage was also having regular contact with Jordan Lay without probation officer approval and *omitted* numerous risk issues from Mr. Lay and other members of his church, including the pastor. The Court responded by revoking his TSR, sentencing him above the policy statement guideline range to 23 months imprisonment (1 month shy of the maximum allowed by statute), placing him back on supervised release for Life, and instructing him to stay away from minors and to comply with his conditions of supervision.

Mr. Visage began his 3rd TSR by waking up the day after he was released from BOP custody and having direct and unapproved contact with Jordan Lay for approximately 30 minutes in blatant defiance of the conditions of supervision. He followed that by "visiting" with Rick and Jordan Lay the 2nd day after his release from BOP custody for another 30 minutes under the guise of picking up his vehicle. That was followed by contact with her (and 2 other young girls) on June 9, 2012. In addition, he blatantly failed to notify this officer or note in his risk book that Jordan Lay was present on or about June 17, 2012, when he transported 2 of Mr. Lay's friends from Knoxville to Sweetwater, Tennessee for a automobile club meeting. Mr. Visage has also failed to follow the instructions of the probation officer, been untruthful with the probation officer which includes submitting incomplete/untruthful sex offender monthly report forms, and he has failed to participate in sex offender treatment as required. As indicated above, Dr. Glennon noted on the last page of the psychosexual exam that **"his sexual offenses seem to be the result of a personality structure that is primarily narcissistic and antisocial. His ability to comply with the conditions of his supervised release seem to be dependant on his ability to _cooperate_ with his community supervisor** (probation officer)." The problem of course is that people who exhibit antisocial and narcissistic traits have trouble complying with rules and they have a tendency to lie, deceive, and manipulate others out of a belief that they are special and the rules do not apply to them.

**Based on the information above, and considering that Mr. Visage has failed 2 polygraph examinations in less than 30 days , <u>which means the probation office cannot say with any reasonable certainty that he is not re-offending and/or living a law-abiding lifestyle,</u> Mr Visage is considered to be a very serious danger to the community, particularly underage girls. Therefore, the probation office respectfully recommends that he be _<u>detained</u>_ pending a revocation hearing before the Court**.

**Petitioning the Court to order:**

That a **<u>warrant</u>** be issued and the defendant be ordered to appear in court for a hearing to determine whether the term of supervision should be revoked.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 19, 2012.

Respectfully submitted,

*s/ Tim Chavers*
Tim Chavers
United States Probation Officer

APPROVED:

*s/Janet F. Landers*     *September 19, 2012*
Janet F. Landers          Date
Supervising United States Probation Officer

## ORDER OF COURT:

A **warrant** is to be issued and the defendant is ordered to appear in court for a hearing to determine whether the term of supervision should be revoked. This petition is to be placed under seal until the defendant is arrested or appears in court.

So ordered.

**ENTER.**

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

<u>**ATTACHMENT**</u>

**HISTORY OF SUPERVISION/COMPLIANCE WITH CONDITIONS as contained in the Dispositional Report submitted to the Court on October 28, 2010 for Mr. Visage's 2nd Revocation Hearing held on November 29, 2010:**

Mr. Visage began his second term of supervised release (TSR) on February 28, 2008. Initially, he appeared to be making good progress. He passed his first three routine polygraph exams and seemed to be taking his sex offender treatment more seriously.

However, things began to change on February 8, 2010, when Mr. Visage reported for another routine polygraph examination. Prior to the exam he admitted that he had been around some minors at his church. Mr. Visage then <u>failed the exam</u>. Specifically, he failed questions regarding whether he had touched the sexual parts of anyone under 18 years old or allowed anyone under 18 years old to touch his sexual parts since his last successful exam. He subsequently admitted that shortly after passing the August 2009 exam, he began fantasizing about some of the underage girls at his church. He admitted he intentionally failed to disclose this information to this officer, his sex offender treatment therapist, or list it on his sex offender monthly report forms as required. When asked why he didn't disclose this risky behavior, he stated it was because he was ***embarrassed*** to admit it.

Instead of requesting a revocation hearing before the Court for these violations, Mr. Visage was given an opportunity to be truthful and address these issues responsibly in weekly sex offender treatment. However, he responded by becoming even more untruthful, deceptive, and misleading with this officer, his sex offender therapist, and members of his community as evidenced by the numerous violations indicated in the Petition for Warrant.

<u>There are other violations which are not contained in the Petition for Warrant.</u>

On <u>September 10, 2010</u>, during an office meeting with this officer and U.S. Probation Officer Joey Byars, Mr. Visage was asked about several recent polygraph risk book entries involving a friend of his from church named Rick Lay and Mr. Lay's approximately 7-year-old daughter. When asked about what was clearly unnecessary contact with Mr. Lay's daughter, Mr. Visage minimized the issue by asserting that any contact he had with Mr. Lay's daughter was in the company of Mr. Lay.

Mr. Visage was then asked if Mr. Lay was aware that he is a convicted/registered sex offender. Mr. Visage stated "yes" and claimed Mr. Lay was a longtime friend who knows "everything" about his past. Mr. Visage was then specifically asked if Mr. Lay was aware of the circumstances of his instant offense. Mr. Visage stated "yes." He was then asked if Mr. Lay was aware of the fact that he was revoked in 2007, after he had sexually related e-mail communication with two underage girls, ages 15 and 16. Mr. Visage stated "yes." He was then asked if he told Mr. Lay he failed a polygraph exam in February 2010 and that he was fantasizing about underage girls at their church. Mr. Visage stated he told both Mr. Lay and their pastor about that and he reiterated that Mr. Lay knows "everything" regarding his sex offender issues. USPO Byars then questioned Mr. Visage's truthfulness and asked him if he was completely truthful or if he had minimized his past conduct with Mr. Lay, his pastor, and other church members. Mr. Visage reiterated that Mr. Lay and his pastor in particular were completely aware of his prior deviant behavior and he has hid nothing from them.

On September 17, 2010, Mr. Visage reported to the Probation Office to surrender to the U.S. Marshals Office after the Court issued a TSR violation warrant. Mr. Lay accompanied Mr. Visage to the office. This officer and Supervising U.S. Probation Officer (SUSPO) Janet Landers met with Mr. Lay and advised him of Mr. Visage's assertion that he (Lay) was a longtime friend who knew everything about his criminal past. Mr. Lay verified he has known Mr. Visage and his family for many years. He added that he has gone to church with Mr. Visage for many years and that he (Lay) is the Chairman of the Administrative Council of Keith Memorial United Methodist Church in Athens, Tennessee, where both he and Mr. Visage regularly attend services.

Mr. Lay was asked if he knew Mr. Visage was a convicted/registered sexual offender. Mr. Lay stated that he and most of the people at their church know Mr. Visage is a convicted sex offender because it was in the local news when he was arrested/convicted several years ago. Mr. Lay also stated it was he who asked Mr. Visage to serve as an usher and collect the offering and communion at their church.

This officer advised Mr. Lay that he and his young daughter were the subject of a conversation with Mr. Visage and USPO Byars on September 10, 2010, because Mr. Visage made several recent polygraph risk book entries regarding contact with him and his daughter. Mr. Lay was advised it was obvious that Mr. Visage was having what he (Visage) described as innocent contact with his (Lay's) underage daughter. This officer also advised Mr. Lay that when Mr. Visage was questioned about how truthful he had been with Mr. Lay regarding his past criminal history, Mr. Visage claimed he had disclosed "everything" to him regarding his past sexual offender behavior. Mr. Lay reiterated that it is well known in their church that Mr. Visage is a convicted sex offender.

This officer then read the Offense Conduct section of Mr. Visage's Presentence Report to Mr. Lay. Among other things, it indicates Mr. Visage was involved in negotiations to have sex with someone he thought was a 6-year-old girl, that he had 40 images on his computer of children under the age of 12, that he had 20 images of child penetration, and movie clips with similar images. This officer asked Mr. Lay if Mr. Visage ever disclosed this information to him. Mr. Lay seemed visibly surprised and stated "No." Mr. Lay then stated Mr. Visage told him his original offense involved him looking at pictures of "teenage girls."

This officer advised Mr. Lay that Mr. Visage claimed he disclosed to him and their pastor that he failed a routine polygraph exam in February 2010 and subsequently told them he had been fantasizing about underage girls at their church. Without hesitation, Mr. Lay stated that was not true. This officer asked Mr. Lay if Mr. Visage advised him he failed his most recent polygraph on August 24, 2010. Mr. Lay stated "No." He added that he didn't know Mr. Visage had failed *any* of his polygraphs.

Mr. Lay was then advised that the reason this officer would not approve for him to conduct communion at their church was because it was conducted in a manner which required the congregation to come to the person holding the sacraments, and that was unacceptable for Mr. Visage, especially considering he had been fantasizing about underage girls at that church and failed to disclose this to this officer or his sex offender therapist, as required. Mr. Lay stated Mr. Visage told him this officer denied his request simply because this officer did not like him.

This officer then advised Mr. Lay that Mr. Visage claimed he disclosed to him that he was previously revoked for re-offending while under supervision and that his behavior involved engaging in sexually explicit e-mail communication with a 15-year-old girl from Pennsylvania and a 16-year-old girl from Iowa. Mr. Lay was also advised that Mr. Visage admitted receiving, from the 15-year-old girl, four to six

pictures of her totally nude, masturbating, and putting objects in her vagina. <u>Once again, Mr. Lay stated he was completely unaware of this behavior on the part of Mr. Visage.</u>

Mr. Lay noted that he and their pastor had a conversation the day before in which the pastor was questioning whether Mr. Visage had been completely truthful with them because he was telling them the only reason he was in trouble was because this officer was picking on him and that "didn't add up."

In addition, on <u>September 22, 2010</u>, this officer received a telephone call from Elizabeth Tullock, LCSW, in Athens, Tennessee. Ms. Tullock advised that Mr. Visage recently began seeing her for counseling after he failed a polygraph exam on August 24, 2010, and was concerned about his problems with the Probation Office. She stated he missed his appointment the previous week so she called his cell phone, which was answered by Mr. Lay. It was Mr. Lay who advised her that Mr. Visage was in federal custody.

This officer advised Ms. Tullock that Mr. Visage did not disclose that he was seeing her. She stated she suspected the same. This officer asked Ms. Tullock what Mr. Visage disclosed to her regarding his past criminal behavior. She stated he did tell her he was a convicted sex offender and that his conviction involved child pornography and some pictures of beastiality. He also told her he was revoked for re-offending, but she suspected he was leaving out some details. She stated he did not tell her he had been fantasizing about underage girls from his church.

Ms. Tullock stated that with the limited information he provided her and the interaction she had with him during the few sessions they had together, she was able to conclude that "<u>he doesn't think about kids in a healthy way</u>," and that he is "so far in denial" that "<u>he does not *think* he is a sex offender</u>." This officer advised Ms. Tullock that Mr. Visage's sex offender therapist, Dr. Bertin Glennon, stated that Mr. Visage is a high risk to re-offend and is a sex offense waiting to happen and that absent stern intervention from the Court Mr. Visage's likelihood of re-offending will only go higher. **<u>She stated "I concur with that assessment 100%</u>**." Ms. Tullock was advised that this officer suspects the only reason he came to her for counseling was to try and get therapeutic "cover" for his supervised release violations. <u>She agreed</u>.